United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8           IN THE UNITED STATES DISTRICT COURT

9         FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

O2 MICRO INTERNATIONAL LIMITED,
11  a Cayman Islands corporation,                Nos.
                                                 C 00-4071 CW (EDL)
12           Plaintiff,                          (consolidated with
                                                 C 01-3995 CW)
13      v.
                                                 ORDER GRANTING IN
14  MONOLITHIC POWER SYSTEMS, INC.,              PART AND DENYING
    a California corporation, and DOES 1         IN PART O2 MICRO'S
15  through 10,                                  MOTION TO ALTER OR
                                                 AMEND THE JUDGMENT
16           Defendant.                          AND RENEWED MOTION
    _____     FOR JUDGMENT AS A
17                                               MATTER OF LAW;
    MONOLITHIC POWER SYSTEMS, INC.,              DENYING MPS'
18  a California corporation,                     RENEWED MOTION FOR
                                                 JUDGMENT AS A
19           Counterclaimant,                    MATTER OF LAW; AND
                                                 DENYING IN PART
20      v.                                       AND CONDITIONALLY
                                                 GRANTING IN PART
21  O2 MICRO INTERNATIONAL LIMITED,              MPS' MOTIONS FOR A
    a Cayman Islands corporation, and            NEW TRIAL
22  O2 MICRO, INC., a California
    corporation,
23
             Counterdefendants.
24  _____/

25

26      Plaintiff and Counterdefendant O2 Micro International Limited

27  and Counterdefendant O2 Micro, Inc. (collectively, O2 Micro) move

28  to amend the November 10, 2005 Judgment to include prejudgment

interest and to declare that U.S. Patent Nos. 6,144,814 (the '814 patent) and 6,316,881 (the '881 patent) are invalid under 35 U.S.C. § 103 as obvious in view of the prior art.  Alternatively, O2 Micro moves for judgment as a matter of law that the patents in question are obvious.  Defendant and Counterclaimant Monolithic Power Systems, Inc. (MPS) opposes these motions.

MPS renews, pursuant to Federal Rule of Civil Procedure 50(b), its motion for judgment as a matter of law.  O2 Micro opposes the motion.  In a separately filed motion, MPS further moves for a new trial and a vacatur of the judgment in this case.  O2 Micro opposes that motion.

These motions were heard on January 6, 2006.  Having considered all of the papers filed by the parties, oral argument on the motions and evidence presented, the Court grants in part and denies in part O2 Micro's motion to alter or amend the judgment and its renewed motion for judgment as a matter of law.  Specifically, the Court amends the judgment to include prejudgment interest on the reasonable royalty award, but denies O2 Micro's motion to amend the judgment to state that certain patent claims are invalid as obvious and denies O2 Micro's renewed motion for judgment as a matter of law.  The Court denies MPS' renewed motion for judgment as a matter of law and denies in part and conditionally grants in part MPS' motions for a new trial.

BACKGROUND

As explained in the Court's previous orders, O2 Micro brought suit against MPS for a declaratory judgment that MPS' '814 patent and '881 patent were invalid and not infringed.  The patents relate

2

to methods and apparatuses for supplying electrical power for driving a discharge lamp, such as a cold cathode fluorescent lamp (CCFL), used to backlight a liquid crystal display panel.

MPS asserted counterclaims against O2 Micro for infringement of its patents. O2 Micro later filed a new lawsuit against MPS, alleging misappropriation of its trade secrets. The Court consolidated the two cases. Following a motion to dismiss, claim construction, motions for summary judgment and discovery disputes, the case proceeded to a jury trial on June 27, 2005. The equitable issues were reserved for trial to the Court.

After an eleven-day trial, the jury returned a verdict. The jury found that O2 Micro's Trade Secret Claims 1 through 11 were trade secrets and that MPS willfully and maliciously misappropriated Trade Secrets 1 and 8 through 11. The jury awarded O2 Micro $12 million in unjust enrichment damages for MPS' misappropriation of Trade Secret 1, the transformer-related claim, but awarded no damages for MPS' misappropriation of Trade Secrets 8 through 11. The jury further found that O2 Micro did not infringe the asserted claims of MPS' '814 patent or its '881 patent and that all asserted claims were invalid as anticipated by the prior art. The jury, however, did not find that the asserted claims were invalid as obvious.

The Court heard additional testimony regarding inequitable conduct and reasonable royalty issues. On November 10, 2005, the Court issued its findings of fact and conclusions of law after the bench trial. The Court found and concluded that, because O2 Micro failed to prove by clear and convincing evidence that the prior art

3

in question was material and that MPS acted with intent to deceive, MPS did not engage in inequitable conduct.  In the same order, the Court concluded that O2 Micro failed to prove unjust enrichment damages for misappropriation of Trade Secret 1.  In lieu of the jury's unjust enrichment damages award, the Court awarded O2 Micro a reasonable royalty and exemplary damages.  That same day, the Court entered judgment and O2 Micro was awarded "the sum of $900,000, for a reasonable royalty pursuant to California Civil Code section 3426.3(b), and $1,800,000, for exemplary damages pursuant to California Civil Code section 3426.3(c), with interest thereon as provided by law."  The judgment was amended on November 30, 2005, to note that, pursuant to the jury's verdict, certain products of O2 Micro did not infringe asserted claims of the '814 and '881 patents and that those asserted claims are invalid as anticipated pursuant to 35 U.S.C. § 102.

STANDARD OF REVIEW

I.   Amendment or Alteration of Judgment

The Ninth Circuit has instructed that amendment or alteration is appropriate under Federal Rule of Civil Procedure 59(e) "if (1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law." Zimmerman v. City of Oakland, 255 F.3d 734, 740 (9th Cir. 2001).

II.  Judgment as a Matter of Law

A motion for judgment as a matter of law after the verdict renews the moving party's prior Rule 50(a) motion for judgment as a

4

matter of law at the close of all the evidence.  Fed. R. Civ.

P. 50(b).  Judgment as a matter of law after the verdict may be

granted only when the evidence and its inferences, construed in the

light most favorable to the non-moving party, permits only one

reasonable conclusion as to the verdict.  Where there is sufficient

conflicting evidence, or if reasonable minds could differ over the

verdict, judgment as a matter of law after the verdict is improper.

See, e.g., Kern v. Levolor Lorentzen, Inc., 899 F.2d 772, 775 (9th

Cir. 1990);  Air-Sea Forwarders, Inc. v. Air Asia Co., 880 F.2d

176, 181 (9th Cir. 1989); Peterson v. Kennedy, 771 F.2d 1244, 1252

(9th Cir. 1985).

III.  New Trial

        A new trial may be granted if the verdict is not supported by

the evidence.  There is no easily articulated formula for passing

on such motions.  Probably the best that can be said is that the

Court should grant the motion "[i]f, having given full respect to

the jury's findings, the judge on the entire evidence is left with

the definite and firm conviction that a mistake has been

committed."  Landes Constr. Co., Inc. v. Royal Bank of Canada, 833

F.2d 1365, 1371-72 (9th Cir. 1987)(quoting 11 Wright & Miller, Fed.

Prac. & Proc. § 2806, at 48-49).

        The Ninth Circuit has found that the existence of substantial

evidence does not prevent the court from granting a new trial if

the verdict is against the clear weight of the evidence.  Landes,

833 F.2d at 1371.  "The judge can weigh the evidence and assess the

credibility of witnesses, and need not view the evidence from the

perspective most favorable to the prevailing party."  Id.

United States District Court

For the Northern District of California

1  Therefore, the standard for evaluating the sufficiency of the

2  evidence is less stringent than that governing the Rule 50(b)

3  motions for judgment as a matter of law after the verdict.

DISCUSSION

4  I.   O2 Micro's Motion to Alter or Amend Judgment

6      O2 Micro seeks to amend the judgment, pursuant to Federal Rule

7  of Civil Procedure 59(e), in two respects.  First, it seeks to

8  amend the judgment to specify an award of prejudgment interest.

9  Second, it seeks to amend the judgment (and alternatively moves for

10 judgment as a matter of law) to include a declaration that the '814

11 and '881 patents are invalid as obvious pursuant to 35 U.S.C.

12 § 103.

13     A.   Prejudgment Interest

14     The Court awarded O2 Micro "interest thereon as provided by

15 the law."  O2 Micro now seeks the Court to specify the interest to

16 be awarded and to amend the judgment to reflect that amount.

17     Post-judgment interest is not in dispute.  The parties,

18 however, disagree, over whether prejudgment interest should be

19 awarded.  O2 Micro contends that it is entitled to prejudgment

20 interest, which is governed by State law.  California Civil Code

21 section 3288 provides, "In an action for the breach of an

22 obligation not arising from contract, and in every case of

23 oppression, fraud, or malice, interest may be given, in the

24 discretion of the jury."  As O2 Micro notes, courts have

25 interpreted "in the discretion of the jury" to mean in the

26 discretion of the trier of fact.  See, e.g., Michelson v. Hamada,

27 29 Cal. App. 4th 1566, 1586-87 (1994).  Asserting that the law

28

provides for prejudgment interest, O2 Micro requests that the judgment be amended to include a prejudgment interest award in the amount of $ 978,075.00: $ 326,025.00 in interest on the reasonable royalty and $ 652,050.00 in interest on the exemplary damages.

MPS argues that O2 Micro is not entitled to prejudgment interest because its request is untimely, does not meet Federal Rule of Civil Procedure 59(e) criteria and prejudices MPS.  These arguments are not compelling.  O2 Micro moved to amend the judgment within ten days after the Court's judgment.  Fed. R. Civ. P. 59(e) ("Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment.").  District courts in this circuit have amended judgments to specify the amount of prejudgment interest pursuant to Rule 59(e).  See, e.g., Lake Tahoe Sailboat Sales & Charter, Inc. v. Douglas County, 562 F. Supp. 523, 524-25 (D. Nev. 1983).  And MPS fails to explain how it is prejudiced by being denied the opportunity to argue for reduced exemplary damages if prejudgment interest were awarded, when it can now argue, and does, that prejudgment interest should not be awarded, in part, because the Court awarded exemplary damages. Furthermore, as O2 Micro notes, interest and exemplary damages can be determined independently of one another.  See Vogelsang v. Wolpert, 227 Cal. App. 2d 102, 125 (1964) ("interest and exemplary damages are not mutually exclusive; both may properly be awarded in the same case").

MPS' argument that prejudgment interest on the exemplary damages should not be awarded, however, is compelling. As the California Supreme Court explains, one of the purposes of

7

prejudgment interest "is to provide just compensation to the injured party for loss of use of the award during the prejudgment period -- in other words, to make the plaintiff whole as of the date of the injury." <u>Lakin v. Watkins Associated Indus.</u>, 6 Cal.4th 644, 663 (1993). The purpose of awarding punitive damages is "for the sake of example and by way of punishing the defendant." Cal. Civ. Code § 3294(a). By definition, punitive damages "are not intended to make the plaintiff whole by compensating for a loss suffered." <u>Id</u>.

O2 Micro argues that <u>Lakin</u> is not on point because it held that section 3291, concerning damages in personal injury cases, does not authorize the award of prejudgment interest on punitive damages. Here, O2 Micro is seeking prejudgment interest under section 3288. Although the California Supreme Court was discussing section 3291, its reasoning concerning the purpose of prejudgment interest on damages is persuasive and applicable to section 3288. Just as awarding "prejudgment interest on punitive damages arising from personal injury actions would therefore give a windfall to the plaintiffs in those actions," <u>id</u>., awarding O2 Micro prejudgment interest on punitive damages here would give an unwarranted windfall to O2 Micro. Thus, even if the Court has the discretion to award prejudgment interest on punitive damages, an issue it does not need to decide, it will not.

But the Court will award prejudgment interest on the reasonable royalty award; to do so would make O2 Micro "whole as of the date of the injury." <u>Id</u>. MPS argues that, because O2 Micro did not assert its transformer and other trade secret claims until

8

**United States District Court**

For the Northern District of California

June 25, 2004, prejudgment interest should be allowed only from June 25, 2004.  As O2 Micro notes, however, prejudgment interest is assessed from the time of the alleged wrongful act.  <u>See, e.g.</u>, <u>Michelson</u>, 29 Cal. App. 4th at 1588.  O2 Micro contends that September 7, 2000, is when the wrongful acts giving rise to its trade secret claim began; on that date, MPS obtained a confidential copy of O2 Micro's OZ960 datasheet.  But, as MPS notes, the jury rejected O2 Micro's trade secret claims based on that datasheet, which O2 Micro does not dispute.  Instead, O2 Micro argues that obtaining the datasheet was the first step in MPS' campaign to acquire information about O2 Micro's transformer.  O2 Micro points out that the datasheet was used to analyze waveforms from an OZ960 board in early October, 2000, and from that comparison, an MPS employee concluded in an email that the OZ960 transformer "must be the key to efficiency" and asked if "we can get a hold of the inverter and/or its transformer."  The Court will assess prejudgment interest from the date of that email: October 3, 2000.  The Court will amend the judgment to award $321,363 in prejudgment interest.[1]

    B.   Jury Verdict and Obviousness

    The jury found that the asserted claims of the '814 and '881 patents are invalid as anticipated either by U.S. Patent No. 5,923,129 (the Henry patent) or an article by Melvin C. Cosby,

---

[1]This amount is calculated according to the following: Interest = Principal*Rate*Time, where the principal is $900,000, the rate is seven percent and the time is 5.101 years.  As O2 Micro notes, for a judgment not based in contract, the rate of prejudgment interest is seven percent per annum.  <u>See</u> <u>Children's Hosp. & Med. Ctr. v. Bonta</u>, 97 Cal. App. 4th 740, 775 (2002).

9

Jr. and R.M. Nelms, entitled "A Resonant Inverter for Electronic Ballast Application," that was published in August, 1994 (the Cosby/Nelms article).  O2 Micro argues that the jury's verdict of anticipation mandates a finding of obviousness and moves to amend the judgment accordingly.  MPS, however, attacks this request as both procedurally and substantively flawed.

As noted above, the Ninth Circuit instructs that Rule 59(e) is an extraordinary remedy that should be used only when there is newly discovered evidence, clear error or a change in the law. See, e.g., Carroll v. Nakatani, 342 F.3d 934, 945 (9th Cir. 2003). Although MPS argues that there is no newly discovered evidence, clear error or change in the law, O2 Micro contends that the jury's verdict concerning obviousness constitutes a clear error of law, which would work a manifest injustice on O2 Micro.  If O2 Micro is correct that the jury's finding of anticipation as a matter of law mandates a finding of obviousness as well, then a Rule 59(e) motion would be appropriate for raising the issue.

MPS' second procedural argument is that O2 Micro waived its right to claim that the jury's findings on anticipation and obviousness are inconsistent: "When counsel is invited to consider whether or not to discharge the jury, counsel risks waiver of objections to any inconsistencies in the jury's findings if counsel does not raise the issue before the jury is excused." Home Indem. Co. v. Lane Powell Moss and Miller, 43 F.3d 1322, 1331 (9th Cir. 1995).  Here, after receiving the verdict, the Court instructed the jurors to go back to the jury room.  Out of the presence of the jury, the Court told the parties that there was a potential problem

10

United States District Court

For the Northern District of California

with the verdict form because the jurors found anticipation but not obviousness.  The Court stated that the jurors could have thought that because they decided that the claims were anticipated there was no need also to decide whether the claims were obvious.  The Court asked the parties what it should do, noting that it could instruct the jurors on anticipation and obviousness, explain that if the claims were anticipated then those same claims were likely also obvious, and invite them to reconsider.  Counsel for MPS, agreeing that it was more logical that the jurors just did not reach the obviousness issue, stated that the verdict was not necessarily inconsistent as a legal matter, and that, as a practical matter, nothing needed to be done.  After the Court stated that it would bring back the jury and put the verdict on the record, counsel for O2 Micro asked for time to think about the issue.  The Court noted that MPS conceded that the verdict was not inconsistent.  Likely for strategic reasons, counsel for O2 Micro chose not to ask the jury to reconsider its verdict based on the possible inconsistency in the jury's anticipation and obviousness findings.

The Court will not amend the judgment.  If O2 Micro wished to remedy the possible inconsistency in the verdict, it should have objected before the Court discharged the jury.  Because it decided not to do so, it has waived its right to object to the jury's possible inconsistent findings.

II.   O2 Micro's Motion for Judgment as Matter of Law

O2 Micro renews its motion for judgment as a matter of law, asserting that the evidence presented at trial supports only one

11

United States District Court

For the Northern District of California

reasonable conclusion: that the '814 and '881 patents are invalid as obvious.  Specifically, O2 Micro argues that MPS failed to present sufficient expert evidence to rebut O2 Micro's showing of obviousness, that MPS failed to present sufficient evidence of secondary considerations of non-obviousness and that the evidence MPS did present is irrelevant because it is inconsistent with the claims as interpreted by the Court.

    A.   Procedural Issues

    Before reaching the substance of O2 Micro's motion, MPS argues that O2 Micro's motion is procedurally barred because it seeks judgment as a matter of law of obviousness and O2 Micro's Rule 50(a) motion did not.  O2 Micro does not deny that it did not previously move for judgment as a matter of law that the asserted claims were obvious.  But it responds that it identified the issue of obviousness as a basis for its prior Rule 50(a) motion and that its present motion closely tracks its prior motion; it argues that this satisfies the specificity requirement.

    Rule 50(a) requires that the motion "specify the judgment sought and the law and facts on which the moving party is entitled to judgment."  Rule 50(b) allows the moving party to "renew" its motion within ten days after the court's entry of final judgment in the case.  Fed. R. Civ. P. 50(b).  Both parties cite out-of-circuit precedent to defend their positions.  The Ninth Circuit, which the Court must follow on this procedural matter, has held that a party cannot raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion.  Freund v. Nycomed Amersham, 347

F.3d 752, 761 (9th Cir. 2003) (citing Advisory Comm. Notes to the 1991 Amendments, Fed. R. Civ. P. 50 ("A post trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion.")).

Reviewing O2 Micro's pre-verdict motion filed on July 14, 2005, the Court finds that O2 Micro raised two of the same arguments it presently raises: that MPS' experts failed to rebut O2 Micro's obviousness case and that MPS failed to present secondary considerations of obviousness. Because these are the same arguments, containing much of the same language, they are not procedurally barred, even though O2 Micro did not previously ask the Court to declare the asserted claims obvious.

The third argument that O2 Micro presently seeks to assert, however, is more problematic. In its Rule 50(a) motion, O2 Micro moved for judgment as a matter of law on anticipation, arguing that the only evidence brought by MPS in opposition to O2 Micro's invalidity claims was irrelevant because it was inconsistent with the claims as interpreted by the Court. As noted above, in its present motion for judgment as a matter of law on obviousness, O2 Micro argues that MPS' evidence in opposition to O2 Micro's invalidity claims is irrelevant to the action because it is inconsistent with the claims as interpreted by the Court. At least two of the paragraphs in the motions are almost identical. However, MPS asserts that the Court need not address the merits of this third argument because the Rule 50(a) motion was directed only towards anticipation and not obviousness. See, e.g., Duro-Last, Inc. v. Custom Seal, Inc., 321 F.3d 1098, 1107 (Fed. Cir. 2003)

13

(holding that a Rule 50(a) motion on anticipation was not sufficient to support a Rule 50(b) motion on obviousness).  But the Court need not rule on this argument, because, as discussed below, MPS presented sufficient secondary considerations of non-obviousness, and thus the evidence does not point to the single conclusion that the asserted claims were obvious.

B.   Substantive Issues

A patent is invalid for obviousness if the differences between it and the prior art "are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art."  35 U.S.C. § 103(a).  To determine if a patent is invalid for obviousness, the court must consider the scope and content of the prior art, the difference between the patented invention and the prior art, and the level of skill in the art.  Graham v. John Deere Co., 383 U.S. 1, 17 (1966); see also Crown Operations Int'l, Ltd. v. Solutia Inc., 289 F.3d 1367, 1375 (Fed. Cir. 2002).  "Determinations of obviousness cannot be based on the hindsight combination of components selectively culled from the prior art to fit the parameters of the patented invention."  ATD Corp. v. Lydall, Inc., 159 F.3d 534, 546 (Fed. Cir. 1998).

As the Court explained to the jury, in determining whether the asserted claims were obvious, the jurors also had to consider evidence of: (1) commercial success due to the merits of the claimed invention; (2) a long felt need for the solution provided by the claimed invention; 3) unsuccessful attempts by others to find the solution provided by the claimed invention; (4) copying of

14

the claimed invention by others; (5) unexpected superior results from the claimed invention; and (6) acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention.  The Court instructed the jury that such evidence may be an indication that a claimed invention would not have been obvious at the time this invention was made.  Although the jury had to consider such evidence, the importance of evidence on whether the claimed invention would have been obvious was up to the jury.

MPS presented evidence of acceptance by others by licensing its patents and evidence of commercial success.  It licensed its patents-in-suit to BiTEK, a commercially significant competitor. That BiTEK's motivation for seeking the licenses is unknown was for the jury to weigh, not this Court on a motion for judgment as a matter of law.  MPS established a sufficient nexus for the jury to conclude that MPS' commercial success was based on its claimed invention.  MPS notes that it started out with no presence in the CCFL market and its first product was its four-switch inverter.  As the Federal Circuit found in a similar situation, "Its lack of market power in this field would seem to suggest that it was the features of the patented invention that led to the commercial success."  <u>Pro-Mold and Tool Co., Inc. v. Great Lakes Plastics, Inc</u>., 75 F.3d 1568, 1574 (Fed. Cir. 1996).

MPS also introduced evidence to show that, following the introduction of its products, its solution of a four-switch inverter to drive a CCFL is now the industry norm.  Thus, this is not a case where evidence of licensing or commercial success alone

15

is used to show non-obviousness.

O2 Micro argues that these secondary characteristics are, in fact, secondary. It notes that secondary considerations may be legally insufficient to override obviousness based on primary considerations. See Richardson-Vicks Inc. v. Upjohn Co., 122 F.3d 1476, 1483 (Fed. Cir. 1997). But in some cases "such evidence is the most probative of obviousness." Id.

As noted above, the Court finds that MPS presented sufficient evidence of secondary considerations of non-obviousness, and thus the evidence does not point to the single conclusion that the asserted claims were obvious. Because there was sufficient conflicting evidence and reasonable minds could differ over the verdict, judgment as a matter of law after the verdict is improper, and the Court denies O2 Micro's motion for judgment as a matter of law.

III.  MPS' Motion for Judgment as Matter of Law

MPS renews its motion for judgment as a matter of law, and moves that the Court find that neither claim 10 of the '814 patent nor claim 25 of the '881 is anticipated and that there is no evidence that MPS acquired, and thus misappropriated, Trade Secret 11.

A.  Anticipation

"A patent is invalid for anticipation when the same device or method, having all of the elements contained in the claim limitations, is described in single prior art reference." Crown Operations, 289 F.3d at 1375; see also Scripps Clinic & Research Fdn. v. Genentech, Inc., 927 F.2d 1565, 1576 (Fed. Cir. 1991)

16

United States District Court

For the Northern District of California

("Invalidity for anticipation requires that all of the elements and limitations of the claim are found within a single prior art reference.").  "An anticipating reference must describe the patented subject matter with sufficient clarity and detail to establish that the subject matter existed in the prior art and that such existence would be recognized by persons of ordinary skill in the field of invention." Crown Operations, 289 F.3d at 1375.  "The question of what a reference teaches and whether it describes every element of a claim is a question for the finder of fact." Med. Instrumentation & Diagnostics Corp. v. Elekta AB, 344 F.3d 1205, 1221 (Fed. Cir. 2003).

As O2 Micro recognizes, issued patents are presumed to be valid; thus, O2 Micro had the burden of going forward and the ultimate burden of persuasion. New England Braiding Co., Inc. v. A.W. Chesterton Co., 970 F.2d 878, 882 (Fed. Cir. 1992) (the presumption of validity "acts as a procedural device which places the burden of going forward with evidence and the ultimate burden of persuasion of invalidity at trial on the alleged infringer").  But the test for judgment as a matter of law does not change because O2 Micro has this burden.  MPS erroneously asserts that, for the Court to grant this motion, MPS need only show that O2 Micro did not present substantial evidence to the jury that would meet O2 Micro's burden of proof.  The grant or denial of a motion for judgment as a matter of law, however, is a procedural issue not unique to patent law, reviewed under the law of the regional circuit in which the appeal from the district court would usually lie.  See, e.g., Summit Tech., Inc., v. Nidek Co., Ltd., 363 F.3d

17

United States District Court

For the Northern District of California

1219, 1223 (Fed. Cir. 2004) (citing <u>Riverwood Int'l Corp. v. R.A.</u> <u>Jones & Co., Inc.</u>, 324 F.3d 1346, 1352 (Fed. Cir. 2003). Thus, MPS' citations to Federal Circuit cases supporting its assertion are inapposite. In the Ninth Circuit, motions for judgment as a matter of law are granted when "the evidence, construed in the light most favorable to the nonmoving party, permits only a conclusion contrary to the jury's verdict." <u>McLean v. Runyon</u>, 222 F.3d 1150, 1153 (9th Cir. 2000).

        1.  Claim 10 of the '814 Patent

MPS contends that O2 Micro failed to prove that either the Henry patent or the Cosby/Nelms article anticipated claim 10. Claim 10 of '814 patent states: "The apparatus of claim 8, wherein the opposite waveforms for each power phase have a symmetrical shape so that the formation of a harmonic signal in the AC signal is suppressed." The parties agreed that the phrase "symmetrical shape" means "the positive (up-going) waveform shape of the AC signal is the mirror image of the negative (down-going) waveform shape but shifted by one half period." Further, the parties agreed that the phrase "the formation of a harmonic signal in the AC signal is suppressed" means "harmonic signals are integer multiples (beginning with the integer 2) of the fundamental repetition frequency of the AC signal. The fundamental repetition frequency is the frequency of the AC signal generated by the network of the plurality of switches. If the AC waveform generated by the network of the plurality of switches is symmetrical, the even harmonics (e.g., 2, 4, 6, 8, etc.) will be suppressed." O2 Micro maintains that both the Henry patent and the Cosby/Nelms article disclose

18

United States District Court

For the Northern District of California

this limitation, and thus the jury's verdict can be upheld based on either reference.

### a. Henry Patent

MPS argues that O2 Micro's evidence that claim 10 was anticipated by this patent was insufficient. O2 Micro responds by citing the expert testimony from Dr. Erickson that claim 10 of the '814 patent is anticipated by Henry. See Trial Tr. 984:20-25 ("Q. And we haven't talked about claim 10 of the '814 patent . . . . Is that disclosed in Henry? A. Yes."). But, as MPS notes, conclusory statements made by an expert witness cannot provide the clear and convincing evidence necessary to prove anticipation. See, e.g., Koito Mfg. Co. v. Turn-Key-Tech, LLC, 381 F.3d 1142, 1152 (Fed. Cir. 2004).

Dr. Erickson provided further and necessary explanation; he stated that the drive waveforms Henry showed were symmetrical. The four waveforms, shown in the parties' papers as Fig. 5D, 5E, 5F and 5G, drive the four switches in the full-bridge and produce the opposite waveforms. O2 Micro states that, essentially, these waveforms are the input to the full-bridge and the AC signal is the output. As Dr. Erickson explained, "Figures 5D through 5G show the waveforms that turn the switches on and off, and as a result, they show what AC signal or rectangular waveform is produced by the switching. . . . P1, P2, N1 and N2 are the same waveforms that operate the switch -- the switches and make them produce -- This P1 and N2 are the same waveforms that turn the switches on and off that we see on Figure 5D through 5 G. They turn the -- operate the switches and make the switches operate with opposite switching and

19

United States District Court
For the Northern District of California

produced a symmetrical AC signal coming out of the bridge."  Trial
Tr. 1898:24-1899:16.  The full bridge in Henry, according to Dr.
Erickson, produces a symmetrical AC signal that confirms that "the
formation of a harmonic signal in the AC signal is suppressed."
And, as noted above, if the waveform generated by the plurality of
switches is symmetrical, the even harmonics will be suppressed.

MPS argues that Dr. Erickson's testimony is not sufficient to
establish that the Henry patent contained all the elements of claim
10.  Part of its criticism of O2 Micro's evidence is that it
addressed the waveform's input to the full bridge, and not the
output waveform.  MPS asserts that O2 Micro conceded that the
Figure 5 waveforms disclosed in the Henry patent are input and not
output waveforms.  But MPS takes out of context O2 Micro's language
that "the drive waveforms are the input to the full bridge."  The
second part of that quote, that MPS ignores, is that "the AC signal
is the output."  And, as noted above, Dr. Erickson testified that
the waveforms produce a symmetrical AC signal coming out of the
bridge.

The Court is not persuaded that a reasonable jury could not
find that the rectangular output waveform in the Henry patent is
symmetrical or that claim 10 is anticipated by the Henry patent.
Although P1 and N1 are not the mirror image of P2 and N2, P1 is the
mirror image of P2 and N1 is the mirror image of P2.  Dr.
Erickson's testimony about the Henry provisional application refers
to the part of the application that was carried over to the Henry
patent.  The Court concludes that the evidence presented to the
jury does not point to the single conclusion that claim 10 of the

20

1    '814 patent was not anticipated by the Henry patent.

2            b.   Cosby/Nelms article

3        Although the evidence on the Henry patent is sufficient to

4    support the jury's finding of anticipation, the Court will address

5    MPS' argument that O2 Micro failed to prove that claim 10 was

6    anticipated by the Cosby/Nelms article.

7        MPS asserts that Dr. Erickson's entire testimony regarding the

8    anticipation of claim 10 by the Cosby/Nelms article consists of

9    just the sixteen lines that it quotes.   See Trial Tr. 969:10-25

10   ("Q. Now, finally, let's look at claim 10 of the '814 . . . . did

11   you find that was present in the Cosby article?  A.  Yes, it is.").

12   As O2 Micro notes, however, Dr. Erickson had more to say on the

13   subject.   While discussing the Cosby/Nelms article, Dr. Erickson

14   explained that "what happens is first switches 'A' and 'D' turn on,

15   they connect the DC input to the output and you get the positive

16   part of the square wave.  Then later you turn the opposite switches

17   on, 'B' and 'C,' which connects the DC input backwards and you get

18   the negative part of the square wave."  Trial Tr. 954:16-21.  Dr.

19   Erickson also testified that the full-bridge described in the

20   Cosby/Nelms article produces a "square-wave voltage" that he

21   illustrated for the jury in Exhibit 5020.  During rebuttal, Dr.

22   Erickson testified that the full bridge disclosed by the

23   Cosby/Nelms article "generates a square wave.  And a square wave

24   is, by definition, a symmetrical waveform."  Trial Tr. 1904:18-20.

25   According to Dr. Erickson, the full-bridge disclosed in the

26   Cosby/Nelms article produces a symmetrical AC signal, which could

27   have led the jury reasonably to find that the "formation of a

28                                    21

United States District Court

For the Northern District of California

harmonic signal in the AC signal is suppressed," and that the Cosby/Nelms article anticipates claim 10 of the '814 patent.

MPS contends that this evidence is insufficient. It argues that Dr. Erickson never "actually testified" that the Cosby/Nelms article disclosed a full bridge with opposite switching. But, as noted above, he testified that the article disclosed a full bridge and he also testified that there were opposite switches; he did not need to say it in the same sentence. MPS argues that Dr. Erickson abandoned his explanation of what the Cosby/Nelms article disclosed, and instead was discussing only his general knowledge, when he testified: "And the way it makes the square wave is by switching these switches which we -- talked about last time how that works in the full-bridge, but there's a DC input voltage that is the input to the full bridge. And what happens is . . . ." Trial Tr. 954:13-16. But the jury could have reasonably thought that Dr. Erickson was testifying about the article itself and merely reminding the jurors that he had previously explained to them how that works generally in the full bridge.

Furthermore, as O2 Micro notes, although the Court concluded that the Cosby/Nelms article does not discuss a full-bridge operating in power phases to generate opposite waveforms of a symmetric shape, the jury could have reasonably concluded otherwise. The Court's inequitable conduct findings do not prove that reasonable minds could come to only one conclusion. The Court found Professor Nelms to be credible, but the jury seemingly did not; nor was it required to find Professor Nelms credible. In sum, the evidence presented to the jury does not point to the single

United States District Court

For the Northern District of California

conclusion that the jury was incorrect in find that claim 10 of the '814 patent was anticipated by the Cosby/Nelms article.

### 2.    Claim 25 of the '881 Patent

MPS contends that O2 Micro failed to prove that either the Henry patent or the Cosby/Nelms article anticipated claim 25 of the '881 patent.  Claim 25 states: "The apparatus of claim 1, wherein the duty cycle is varied so that the AC signal delivers a reduced amount of power to the load."  The Court defined the term "load" for this claim as "a discharge lamp selected from the group of cold cathode fluorescent, metal halide or sodium vapor."  The Court further defined the phrase "the duty cycle is varied so that the AC signal delivers a reduced amount of power to the load" to mean "adjusting the pulse width of the AC signal output by the network of plurality of switches to decrease the amount of power delivered to the load."  The phrase "duty cycle" means "in percent, $100(t_0/T)$ where T is the period between pulses and $t_0$ is the pulse width." O2 Micro maintains that this claim is anticipated by the Henry patent, and thus the jury's verdict must be upheld; it states that it did not contend at trial, and does not contend here, that the Cosby/Nelms article anticipates claim 25.

The parties do not dispute that the Henry patent discloses varying the duty cycle.  But MPS contends that O2 Micro failed to show that the duty cycle was varied to deliver a reduced amount of power to the load and that Dr. Erickson simply opined that claim 25 was anticipated by the Henry patent.  O2 Micro demonstrates in its

United States District Court

For the Northern District of California

1    opposition, however, that Dr. Erickson did more.[2]

2        Dr. Erickson explained the dashed lines in Figure 5 of the

3    Henry patent: "What Henry is showing there is the circuitry that

4    varies the duty cycle is reducing the width of the pulse making

5    this pulse width, when the switch is on, shorter.  And that's

6    varying the duty, or, in fact, reducing the duty cycle."  Trial Tr.

7    984:13-16.  Previously, Dr. Erickson had explained to the jury that

8    reducing the duty cycle and making the pulse widths shorter reduces

9    the amount of power delivered to the load.  He stated that "by

10    getting rid of part of the cycle and making it reduced pulse width

11    and putting some zero time in here, you get less output.  So you

12    can reduce the power, for example, that goes to the output."  Trial

13    Tr. 965:19-22.  MPS asserts that this testimony deals only with

14    obviousness generally; but that is incorrect.  The testimony was

15    elicited in response to the question: "Now, I didn't ask you what

16    varied duty cycle meant.  Can you explain that to the jury?"  Trial

17    Tr. 963:24-25.  MPS' argument that this testimony merely explained

18    the requirements of claim 25 generally also fails.  After

19    discussing varying the duty cycle and reducing the power that goes

20    to the output, Dr. Erickson testified that this is information

21    _____

22        [2] O2 Micro further argues that the Henry patent itself
     provides evidence that the jury could rely on to find anticipation
23    of claim 25.  It cites a case concluding that the patent claims
     were anticipated by a prior art reference based on the reference
     itself without expert testimony.  See Prima Tek II, LLC v. Polypap,
24    S.A.R.L., 412 F.3d 1284, 1290 (Fed. Cir. 2005).  But, as MPS notes,
     the court in Prima Tek stated, "Expert testimony was not required,
25    the technology being easily understood without expert testimony."
     412 F.3d at 1290 n.7.  That is not true in this case.

26

27

28                                      24

United States District Court

For the Northern District of California

1 discussed in the Henry patent.

2    O2 Micro presented evidence to the jury from which the jury

3 reasonably could conclude that claim 25 of the '881 patent was

4 anticipated by the Henry patent; MPS fails to show that the

5 evidence presented to the jury points to the single conclusion that

6 the claim 25 was not anticipated by the Henry patent.

7    B.   Trade Secret No. 11

8    Trade Secret 11 comprises:

9    O2 Micro's method of using multiplexing functions in the
     pins of the OZ9RR inverter controllers so that one pin of
10   the OZ9RR inverter controller may support multiple functions
     co-existing in an inverter application, including for
11   example, use of one pin for both Soft Start (SST) and
     Compensation (CMP) and the use of one pin for both Voltage
12   Sense (VSEN) and Dimming Control (DIM).

13 The Court, in its November 10, 2005 order, denied MPS judgment as a

14 matter of law that it did not use Trade Secret 11.  MPS now argues

15 that jury's verdict that MPS misappropriated Trade Secret 11 must

16 be reversed as a matter of law because O2 Micro failed to introduce

17 evidence that MPS ever acquired the trade secret.

18    O2 Micro contends that Exhibit 474, an email from a MPS

19 employee forwarding a schematic diagram of the OZ9RR product to MPS

20 engineers and managers, shows that MPS acquired this information at

21 least as early as November, 2002.  The schematic shows the pins on

22 the OZ9RR chip and identifies their functions: "SST/CMP" for one

23 pin and "VSEN/DIM" for another pin.  Dr. Erickson testified that

24 the schematic does not say multiplexer or MUX, but it "does show

25 the circuitry" for the multiplexed pins.  Trial Tr. 1071:10-14.  In

26 its opposition, citing Dr. Erickson's testimony, O2 Micro states

27 that the MPS engineers who received this schematic were well aware

28                                    25

United States District Court

For the Northern District of California

that the identification of two functions for a single pin indicates that the functions are multiplexed on that pin. But, as MPS notes, O2 Micro did not introduce evidence at trial that the MPS engineers who saw the schematic were well aware it showed a multiplexing function, and O2 Micro provides no trial transcript citation for this assertion, other than Dr. Erickson's statement regarding circuitry. Furthermore, MPS argues in its reply that it is a scientifically inaccurate assumption that a chip with more than one function on a pin reveals to an engineer that the two functions are multiplexed so that the signals co-exist at the same time on that pin.

Regardless, the Court cannot conclude that the jury improperly inferred that MPS acquired Trade Secret 11; the evidence presented at trial, although limited, does not point to the sole conclusion that the jury was incorrect in finding that MPS acquired and thus misappropriated Trade Secret 11.

MPS' renewed motion for judgment as a matter of law is denied.

IV.   MPS' Motion for a New Trial

MPS moves for a new trial. Specifically, it argues that the Court should grant a new trial on anticipation, infringement and misappropriation of trade secrets. Pursuant to Federal Rules of Civil Procedure 50 and 59, MPS also conditionally moves for a new trial on unjust enrichment damages due to trade secret misappropriation in the event that the Federal Circuit reverses the Court's grant of judgment as a matter of law that the jury's award of unjust enrichment damages was not based on evidence presented at trial.

26

**United States District Court**
For the Northern District of California

A.  Patent-Related Issues

    1.  Anticipation

MPS argues that it is entitled to a new trial on anticipation because O2 Micro argued invalidity based on Dr. Erickson's textbook, which was an undisclosed reference, and based on the Cosby/Nelms article, which the Court concluded, in its findings of fact and conclusions of law, was not material.  O2 Micro responds that neither ground warrants overturning the jury's verdict.

    a.  Dr. Erickson's textbook

MPS argues that O2 Micro ambushed it at trial with Dr. Erickson's textbook, which was not previously disclosed.  Although the jury did not specify the reference upon which it based its anticipation finding, MPS claims that O2 Micro emphasized the Erickson textbook more than any other reference, resulting in prejudice that can only be remedied by a new trial.

O2 Micro does not dispute that the Erickson textbook was not previously disclosed as an invalidity reference.  Instead, it first argues that MPS waived its objection to the textbook by failing to object consistently at trial.  As O2 Micro notes, MPS objected twice: once during the testimony of Dr. Lin and again during the cross-examination of Mr. Moyer.  MPS raised no objections during the opening statement or the closing argument; nor did MPS object when the Erickson textbook was admitted into evidence or when Dr. Erickson, O2 Micro's expert, presented testimony regarding his textbook.

MPS responds that it was not required to continue to object after having twice made the same objection and twice being

United States District Court
For the Northern District of California

overruled.   It cites Federal Rule of Evidence 103(a): "Once the
court makes a definitive ruling on the record admitting or
excluding evidence, either at or before trial, a party need not
renew its objection or offer of proof to preserve a claim of error
for appeal."   But, as MPS recognizes in its moving papers, the
Court did not admit the textbook as evidence of prior art that
could show anticipation.   The Court overruled MPS' first objection
that Dr. Lin's testimony concerning the textbook was expert
testimony and not disclosed in O2 Micro's final invalidity
contentions because the testimony was to show that the basic
components of a resonant converter were understood and taught back
in the early 1990's and that Dr. Lin learned about them from the
textbook.   The Court overruled MPS' second objection and allowed
the testimony, only after O2 Micro convinced the Court that the
testimony was not to show invalidity.   The Court never made a
definitive ruling admitting the Erickson textbook as evidence to
show anticipation, and Rule 103(a) is inapposite.

Further, two of the cases cited by O2 Micro are apposite.   As
in Kaiser Steel Corp. v. Frank Coluccio Const. Co., 785 F.2d 656,
658 (9th Cir. 1986), nothing prevented MPS "from raising this issue
with the trial court well before the jury began its deliberations.
This action would have permitted the judge to examine the alleged
prejudice" and to issue a curative instruction, if warranted, that
the textbook could not be the basis for a finding of anticipation.
Id.   And, as in Kehr v. Smith Barney, Harris Upham & Co., Inc., 736
F.2d 1283 (9th Cir. 1984), where the court upheld the denial of a
new trial, O2 Micro's reliance on the Erickson textbook as

anticipating prior art allegedly "occurred principally during

opening statement and closing argument, rather than throughout the

course of the trial." <u>Id</u>. at 1286.  While constant objections are

not required, MPS "never objected during the closing argument or

moved for a mistrial." <u>See id</u>.  Instead, it waited until after the

jury reached its verdict and after the Court issued judgment before

it objected by moving for a new trial.

The Court finds that MPS waived its objections absent a

showing of plain error, which it does not show.  Furthermore, the

jury was instructed regarding anticipation:

> A patent claim is invalid if the claimed invention is not
> new.  For the claim to be invalid because it is not new,
> all of its requirements must be in a single previous device
> or method or described in a single previous publication or
> patent.  We call these things prior art references.  The
> only prior art references that you may consider are the
> Henry, Cosby and Park References.

Trial Tr. 1971:25-1972:6.  As O2 Micro notes, we presume jurors

follow the court's instructions absent extraordinary situations.

<u>Tak Sun Tan v. Runnels</u>, 413 F.3d 1101, 1115 (9th Cir. 2005).  This

is not an extraordinary situation "where we can lay aside the

'crucial assumption underlying our constitutional system of trial

by jury that jurors carefully follow instructions.'"  <u>Id</u>. (quoting

<u>Francis v. Franklin</u>, 471 U.S. 307, 324 n.9 (1985)).  The jury

instructions provided clear direction as to the scope of references

the jury could consider for anticipation.  Nonetheless, the Court

will briefly address MPS' argument that the textbook was O2 Micro's

primary piece of evidence as to anticipation and that its admission

was erroneous.

Much of what MPS points to is O2 Micro's use of the textbook

**United States District Court**
For the Northern District of California

as evidence of obviousness, not of anticipation.  This motion is for a new trial on the grounds of the jury's finding of anticipation, not of obviousness.  Although MPS claims that the textbook was the centerpiece of O2 Micro's argument at trial, it cites no testimony that the textbook itself disclosed all of asserted claims of the '814 and '881 patents, which was required for a finding of anticipation.  Dr. Erickson testified that his characterization of the Cosby/Nelms article was reflected as Figure 19.1 in his textbook, which shows the elements that are found in that article and his understanding of that article in 1994 or 1995; he did not testify his textbook itself anticipated the patents in question.  MPS quotes closing argument, where O2 Micro's counsel argued, "If Dr. Erickson can write a book before this litigation ever starts characterizing all of the issues in the case and telling the world this technology is basic and it covers this, four switches, et cetera, et cetera, then it is obvious, it is anticipated."  Trial Tr. 2104:8-12.  But that is attorney argument, which the jury was expressly instructed is not evidence.

As MPS notes in its reply, Dr. Erickson's trial testimony of his understanding of the Cosby/Nelms article in 1994 or 1995 is directly contradicted by an expert report that Dr. Erickson signed on July 21, 2003, in which he stated that, had he been aware of the Cosby/Nelms article, he would have included his opinion regarding the invalidity of the '814 and '881 patents based on the Cosby/Nelms article in his expert report dated May 22, 2003. Although this inconsistency is troubling, it is not grounds for a new trial.  Nor are the Court's rulings admitting testimony from

30

Dr. Lin and Mr. Moyer concerning the Erickson textbook grounds for a new trial. The Court's admission of evidence for one purpose did not become erroneous because MPS failed to object when O2 Micro allegedly used the admitted evidence for a purpose other than the purpose for which Court originally, and properly, admitted the evidence.

MPS' motion for a new trial based on the admission of the Erickson article is denied.

b. Cosby/Nelms article

MPS argues that a new trial on anticipation is appropriate based on the Court's finding that the Cosby/Nelms article is not material. MPS notes that to establish inequitable conduct, O2 Micro had to show by clear and convincing evidence that the Cosby/Nelms article was material; to establish anticipation, O2 Micro had to show by clear and convincing evidence that the Cosby/Nelms article disclosed every limitation of each MPS claim in suit. Because the Court utilized the same clear and convincing standard that the jury was required to use in determining anticipation, MPS argues that the Court's finding compels the conclusion that the Cosby/Nelms article does not support a finding of anticipation. That is incorrect. As discussed above, the Court's inequitable conduct findings do not prove that the jury erred. The Court's finding that the Cosby/Nelms article was not material does not even prove, in and of itself, that the jury's verdict was against the weight of the evidence. The jury could have found anticipation based on the Henry patent. As noted above, O2 Micro never asserted that the Cosby/Nelms article disclosed

31

claim 25 of the '881 patent.

In its reply, MPS argues that a new trial is appropriate regardless of whether a reasonable juror could have found anticipation by the Cosby/Nelms article or the Henry patent.  The standard for granting a new trial is lower than the standard for granting a judgment as a matter of law, as noted above.  But, after giving full respect to the jury's finding and reviewing the evidence, the Court is not "left with the definite and firm conviction that a mistake has been committed."  <u>Landes Constr. Co.</u>, 833 F.2d at 1371-72.  Thus, MPS' motion for a new trial on this ground is also denied.

     2.  Infringement

MPS argues that the Court should grant a new trial on infringement because the Court improperly allowed Dr. Erickson's expert testimony of non-infringement.[3]  MPS asserts that Dr. Erickson's testimony was based on tests performed by Mr. Kuhlmann, that O2 Micro never showed that it was proper for Dr. Erickson to rely on Mr. Kuhlmann's test results and thus that the testimony should have been excluded as unreliable hearsay.

Under Federal Rule of Evidence 702, an expert's opinion is admissible "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  Although an expert may not

_____

[3]O2 Micro's objection to the declaration of Clay Ger in support of this motion is sustained, and the declaration will not be considered.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

adopt another's data without verifying the validity and reliability

of that data, Rule 703 allows an expert to rely on facts or data

relied upon by experts in the particular field in forming opinions

or inferences upon the subject; an expert is not required to

testify only upon data the expert has personally gathered or

tested.  See Fed. R. Evid. 703.[4]

MPS argues that Dr. Erickson had no knowledge of Mr.

Kuhlmann's methodology; it uses snippets of testimony to support

its argument.  But the evidence presented at trial shows otherwise.

Dr. Erickson testified that he "didn't go to the lab and push the

buttons or anything like that," but he "did specify what [he]

wanted tested and how it should be tested."  Trial Tr. 1027:6-9.

He testified that he reviewed the Kuhlmann report and that Mr.

Kuhlmann's testing methodology was well-known: Mr. Kuhlmann used

"an automated measuring system" called a "gain phase meter" that is

"a well-known piece of equipment that is typically used to make

this kind of measurement."  Trial Tr. 993:19-22.  Dr. Erickson

stated that he had two gain phase meters in his office and wrote a

section in his book "about how to make this kind of measurement."

---

[4] Rule 703 provides:
The facts or data in the particular case upon which an
expert bases an opinion or inference may be those
perceived by or made known to the expert at or before the
hearing. If of a type reasonably relied upon by experts in
the particular field in forming opinions or inferences
upon the subject, the facts or data need not be admissible
in evidence in order for the opinion or inference to be
admitted. Facts or data that are otherwise inadmissible
shall not be disclosed to the jury by the proponent of the
opinion or inference unless the court determines that
their probative value in assisting the jury to evaluate
the expert's opinion substantially outweighs their
prejudicial effect.

United States District Court

For the Northern District of California

Trial Tr. 993:23-25.  Based on this information, he told the Court and jury that he believed the Kuhlmann report accurately represented the resonant frequencies, the operating frequency and the filter.  And he further testified, "I see no reason to doubt the report.  It used a gain phase analyzer, that's a well-known device, and you know, all you do is take a picture of the front panel of the gain phase analyzer.  So you know, there aren't -- there isn't a lot of opportunity to massage the data there."  Trial Tr. 1029:4-8.

Pursuant to Rule 703, the testing was performed according to methods commonly accepted in the industry and Dr. Erickson's testimony regarding non-infringement was properly admitted.  The evidence did not establish that a test using simple wires is not sufficient to measure the frequencies, as MPS asserts.  Dr. Erickson testified that even assuming no high impedance probes were used it was still reasonable to rely on Mr. Kuhlmann's data.  Thus, MPS' argument, that it was not its burden to make a threshold showing of unreliability in order to exclude Dr. Erickson's testimony based on Mr. Kuhlmann's report, fails.  As O2 Micro correctly notes, Mr. Kuhlmann was within the subpoena power of the Court and MPS could have sought leave to call him in its rebuttal case to challenge his methodology, but MPS chose not to do so.

Thus, the Court did not err in admitting this testimony; nor did the Court err in not allowing MPS to introduce evidence, allegedly exposing the flaws in Mr. Kuhlmann's data, that consisted of tests run by Mr. Matzen and a video of Mr. Matzen's testing that were not previously disclosed.  MPS' motion for a new trial on

34

1   infringement is denied.

2        B.   Trade Secret Issues

3        MPS contends that it is also entitled to a new trial on the

4   secrecy, pre-existing knowledge and intent elements of use of Trade

5   Secret 1, and a conditional new trial on O2 Micro's remedies for

6   misappropriation of the alleged trade secrets.

7             1.   Secrecy of Trade Secret 1

8        As the Court discussed in its prior order denying MPS judgment

9   as a matter of law that it did not use Trade Secret 1, this

10  transformer-related trade secret claim consists of various

11  permutations of seven features, including size of wires, number of

12  turns and number of unfilled bays.  Although the parties agree that

13  combinations of non-secret information can be trade secrets, MPS

14  argues it should be granted a new trial because O2 Micro failed to

15  show a combination trade secret, in part, because various of the

16  transformer features, such as wire size, were not secret.

17       But, as O2 Micro notes, this argument ignores the testimony

18  provided at trial that many of the transformer features listed in

19  Trade Secret 1 are interrelated and interdependent.  MPS' expert

20  conceded that in order to optimize the attributes the transformer

21  designer seeks, Dr. Lin, like other people using transformers, had

22  to go through an iterative process when he designed O2 Micro's

23  transformer.  Trial Tr. 1434:13-14.  To change one part requires

24  readjusting another part and trying various combinations.  For

25  example, O2 Micro notes and MPS' expert agreed that there are many

26  different ways to get a turns ratio of 100.  Thus, evidence

27  presented at trial supported O2 Micro's contention that the work

28                                   35

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

Dr. Lin did resulted in a combination of transformer characteristics that was optimal and secret.  As O2 Micro notes, MPS points to no evidence showing that Dr. Lin's design concerning a combination of characteristics -- number of bays filled, wire size, turns ratio and number of turns -- was non-secret.  These are the same characteristics that, as discussed in the Court's prior order, MPS engineer Simon Tsai stated he experimented with on MPS' transformer in response to customer complaints and Mr. Moyer's instruction.  It is irrelevant that all of the separate elements may have been already known in the industry.  As the Court instructed the jury and noted in its previous order:

> Combinations of public information from a variety of different sources when combined in a novel way can be a trade secret.  It does not matter if a portion of the trade secret is generally known, or even that every individual portion of the trade secret is generally known, as long as the combination of all such information is not generally known.

Final Jury Instructions at 8:17-23.

The Court finds that the jury's finding of that Trade Secret 1 was a trade secret is supported by the evidence.  The Court is not left with a definite and firm conviction that the jury committed a mistake in reaching its verdict.  The Court denies the motion for a new trial on secrecy.

        2.  Pre-Existing Knowledge

MPS contends that it is entitled to a new trial because the jury ignored overwhelming evidence that MPS had pre-existing knowledge of any transformer-related trade secret information that it allegedly used, and thus the jury's finding of misappropriation is against the clear weight of the evidence and must be set aside.

36

United States District Court

For the Northern District of California

It further argues that the Court erred in rejecting its request that the verdict form contain a separate entry for pre-existing knowledge.  The Court will address the latter argument first.

MPS argues that because it is settled law that a defendant's pre-existing knowledge is a complete defense to a trade secret claim, the jury should have been required by the verdict form specifically to decide pre-existing knowledge.  O2 Micro responds that two of the cases MPS cites to support its settled-law argument are distinguishable and that the third case was decided long before California's adoption of the UTSA.  See Oral Vision, Inc. v. Encompass, Inc., No. C94-20430-JW, 1995 WL 66790 (N.D. Cal.); Rigging Int'l Maint. Co. v. Gwin, 128 Cal. App. 3d 594, 608 (1982); Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Corp., 267 F. Supp. 726 (S.D. Cal. 1966).  Regardless of whether these cases hold that it is settled law that pre-existing knowledge is a complete defense, none of the cases holds that a party is entitled to a separate entry on the verdict form for  pre-existing knowledge.  And, as O2 Micro notes, MPS' argument that omitting pre-existing knowledge is akin to omitting fair use from the verdict form in a copyright case is unpersuasive: the       pre-existing knowledge defense is not found in California's Uniform Trade Secrets Act, whereas the fair use defense to copyright infringement appears in the copyright statute.  See Cal. Civ. Code § 3426 et seq.; 17 U.S.C. § 107.

Although it was not on the verdict form, the jury was instructed on pre-existing knowledge.  In its jury instruction on the definition of a trade secret, the Court instructed the jury,

United States District Court

For the Northern District of California

"If the principal person who can obtain economic benefit is aware of it, there is no trade secret." MPS contends that this instruction was buried in dense jury instructions and that without a verdict form that required the jury actually to vote on pre-existing knowledge, MPS' key defense, the jury had no clear way to act on that instruction. But, as noted above, it is presumed that the jury followed instructions, even in a complex case with lengthy jury instructions; thus, MPS' contention is not well taken. Not including a separate part on the jury verdict for pre-existing knowledge was not an error.

O2 Micro argues that, even if a question on pre-existing knowledge had appeared on the verdict form, it would have had no impact on the verdict, which it contends the evidence strongly supported. While the Court does not agree that the evidence strongly supported the verdict, it does find that the jury's verdict was supported by the evidence. As the Court previously recognized, the jury could reasonably have disbelieved MPS' testimony regarding when particular information and exhibits were acquired by MPS. The jury did not need to believe that evidence was forged in order to reach its verdict; nor does O2 Micro contend that any of the documents were forged. Although MPS presents in its papers, and presented to the jury, evidence of pre-existing knowledge, after having given full respect to the jury's findings and based on all of the evidence, the Court is not left with the definite and firm conviction that the jury's verdict, with its implicit finding that MPS did not have pre-existing knowledge of O2 Micro's transformer trade secret, was a mistake.

38

**United States District Court**
For the Northern District of California

3.   Intent

MPS argues that it is entitled to a new trial as to intent on the transformer trade secret claim because the evidence at trial did not show that it knew or had reason to know that obtaining a board from Sumida in October, 2000 would misappropriate an O2 Micro trade secret, nor did the evidence show that MPS acted wilfully and maliciously.

As MPS notes, misappropriation of trade secrets is an intentional tort.  PMC, Inc. v. Kadisha, 78 Cal. App. 4th 1368, 1382 (2000).  Therefore, MPS argues, O2 Micro must prove that MPS obtained Trade Secret 1 using improper means.  MPS quotes PMC, Inc., "Use of a trade secret without knowledge it was acquired by improper means does not subject a person to liability unless the person receives notice that its use of the information is wrong." 78 Cal. App. 4th at 1383.  This is correct.  Improper means is one way to show misappropriation; but there are others.  See Cal. Civ. Code § 3426.1(b).  The court in PMC, Inc. further stated that defendants can be liable for misappropriation if "they knew or had reason to know that the knowledge of the trade secrets was derived from or through a person who had improperly acquired the knowledge, or the secrets were obtained by a person who owed a duty to plaintiffs to maintain the secrecy."  Id.  California Civil Code section 3426.1(a) provides, "'Improper means' includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means.  Reverse engineering or independent derivation alone shall not be considered improper means."

39

United States District Court

For the Northern District of California

As the Court explained to the jury: "MPS acted willfully if MPS knew that it was misappropriating O2 Micro's trade secrets when it improperly used or disclosed them.  MPS acted with malice if it knew the consequences of its conduct and willfully and deliberately failed to avoid those consequences."

MPS presents evidence showing lack of intent and lack of improper means; some evidence shows that MPS did not know that obtaining a board from Sumida would misappropriate an O2 Micro trade secret.  The board in question was marked with Sumida's name and had no O2 Micro logo on it.  The MPS employee who obtained the board from Sumida testified that he thought the board was a production board, which is intended for the open market.  MPS' employees Mr. Moyer and Mr. Ueunten testified that they too thought that the board was a Sumida production board and that it had the features that are characteristic of production boards.

But O2 Micro presents evidence supporting the jury's finding that MPS misappropriated the trade secrets willfully and maliciously.  As noted above, O2 Micro contends that MPS' misappropriation began when it first obtained, distributed and then used a OZ960 datasheet.  "Confidential" was stamped diagonally across each page of the data sheet in letters almost three-fourths of an inch tall; the words "NOT FOR PUBLIC RELEASE" appeared on the front page.  The datasheet arrived in an email sent, to the personal email account of an MPS executive, by a Mr. Kim, who wrote that he had obtained the datasheet "from a friend," and noted, "You have to keep confidential."  It was not kept confidential.  As Mr. Ueunten testified, on receiving the email, he saw that the

40

United States District Court

For the Northern District of California

datasheet had a confidential stamp across the front of it, but he still reviewed it.  Mr. Moyer testified that upon receiving the data sheet that was stamped confidential he "felt awkward in seeing it" because of the confidential stamp.  Trial Tr. 506:9.  When asked if he reviewed it, Mr. Moyer responded, "Of course."  Trial Tr. 506:14.  In an October 3, 2000, email, mentioned above, Mr. Ueunten concluded, based on a comparison of information from the confidential datasheet, that the transformer "must be the key to efficiency" for the OZ960, and asked if MPS could "get a hold of the inverter and/or its transformer."  Shortly thereafter, MPS obtained what it states was a production board, but what Dr. Lin testified was a demo board.

Although the jury rejected trade secret claims based on the confidential datasheet, the Court finds that the above evidence cited by O2 Micro supports the jury's finding that MPS had the necessary intent to misappropriate willfully and maliciously.  The Court recognizes that the above evidence cited by MPS would have supported a jury finding that MPS did not misappropriate the trade secrets willfully and maliciously.  But, again, after having given full respect to the jury's findings, based on all of the evidence, the Court is not left with the definite and firm conviction that the jury's verdict was a mistake.

     4.  Damages

MPS requests a conditional new trial, pursuant to Federal Rule of Civil Procedure 50, on unjust enrichment damages in the event that the Federal Circuit reverses the Court's judgment as a matter of law that the award of unjust enrichment damages was not

41

supported by the evidence presented at trial.  As MPS notes, O2
Micro raises the same arguments in its opposition that this Court
rejected previously.  And, even after giving full respect to the
jury's findings, the Court is left with the definite and firm
conviction that a mistake in awarding unjust enrichment damages was
committed.  The Court grants MPS a conditional new trial on unjust
enrichment damages.

CONCLUSION

     For the foregoing reasons, the Court DENIES in part and GRANTS
in part O2 Micro's motion to alter or amend the judgment and
renewed motion for judgment as a matter of law (Docket No. 1249):
the Court amends the judgment to award $321,363 in prejudgment
interest, but denies O2 Micro's motion to amend the judgment to
state that certain claims are invalid as obvious and denies O2
Micro's renewed motion for judgment as a matter of law.  The Court
DENIES MPS' renewed motion for judgment as a matter of law (Docket
No. 1253).  The Court DENIES in part and CONDITIONALLY GRANTS in
part MPS' motions for a new trial (Docket No. 1255): the Court
conditionally grants MPS' request for a new trial on unjust
enrichment damages, but denies all other requests for a new trial.

     IT IS SO ORDERED.


Dated: 3/9/06

_____
CLAUDIA WILKEN
United States District Judge

42

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court

For the Northern District of California